UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kathleen Ditmanson Adams, | Civil No. 12-11 (SRN/AJB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CitiMortgage, Inc., | |
| Defendant. | |

Dee Rowe, Office of Dee Rowe, 2204 Fremont Avenue South, Minneapolis, MN 55405, for Plaintiff.

David A. Orenstein and Kendall L. Bader, Barnes & Thornburg LLP, 225 South Sixth Street, Suite 2800, Minneapolis, MN 55402, and Michael H. Gottschlich, Barnes & Thornburg LLC, 11 South Meridian Street, Indianapolis, IN 46204, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on a Motion to Dismiss filed by Defendant CitiMortgage, Inc. [Doc. No. 6]. For the reasons stated below, the Court denies the Motion in part, and grants it in part.[1]

I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Kathleen Ditmanson Adams owns property in Minneapolis, although the property is not her current residence. (Compl. at Introduction.) This property was secured by a mortgage owned by Defendant CitiMortgage, Inc. (Id. ¶ 10.) In 2010,

---

[1] Plaintiff also brought a Motion to Remand. [Doc. No. 10]. At the hearing, however, she withdrew that Motion and the Court will not discuss it further.

Plaintiff fell behind on her mortgage payments on the property. (Id. ¶ 12.) In early 2011, CitiMortgage instituted foreclosure proceedings on the property. (Id. ¶ 17.) A foreclosure sale was ultimately set for April 26, 2011. (Id. ¶ 34.) Throughout February, March, and April, Plaintiff's counsel repeatedly requested that CitiMortgage modify Plaintiff's mortgage payments to payments she could afford to make.[2] (Id. ¶ 28.) When she received no response from CitiMortgage, Plaintiff contacted the Minnesota Attorney General's Office. (Id. ¶ 33.) Not until the weekend before the scheduled foreclosure sale, however, was Plaintiff's attorney able to reach someone at CitiMortgage to begin the process of modifying Plaintiff's loan. (Id. ¶¶ 36-37.) The foreclosure sale was postponed until May 31, 2011.

Plaintiff submitted documentation to CitiMortgage in support of her loan modification request. On May 11, 2011, she logged onto her CitiMortgage account page and found a "Modification Details" notice. (Id. ¶ 50.) This notice showed the current balance, interest rate, term, and payment schedule for Plaintiff's mortgage in one column, and listed a "proposed" loan in a second column. (Id. Ex. F.) The proposed loan was a fixed-rate loan with a 2.00% interest rate, resulting in total monthly payments of $1,011.53. (Id.) The term of the loan was listed as 480 months, or 40 years, although the loan was described as "FIXED 30 YR." (Id.)

A week or so after receiving this notice from CitiMortgage, Plaintiff logged onto

---

[2] Because the mortgage-secured property was not Plaintiff's residence, she was not eligible for the Home Affordable Modification Progam, or HAMP.

2

her CitiMortgage online account page to find an "Important Message." (Id. Ex. H.) The message's first line stated, "Our records indicate that you have accepted our modification offer." (Id.) The message warned Plaintiff that, as a result of accepting the modification offer, she would "not be able to continue with an application to refinance the property." (Id.)

Despite repeated requests, CitiMortgage did not send Plaintiff any writing documenting the details of her loan modification until August 2011. Before August, CitiMortgage representatives informed Plaintiff's counsel that Plaintiff's actual loan payment would be $1,082.21, rather than the $1,011.53 in the Modification Details notice. (Id. ¶ 70.) Although Plaintiff had not yet received any written information from CitiMortgage regarding her modification, she made a modified payment of $1,083.00 as of July 1, 2011, and $1,082.21 as of August 1 and September 1, 2011. (Id. ¶¶ 82, 86, 97-99.)

Finally, in a letter dated August 11, 2011, CitiMortgage purported to document the terms of Plaintiff's loan modification. (Id. Ex. T (corrected).)[3] This letter demanded that Plaintiff sign and return it by August 25, 2011, or forfeit the modification of her mortgage. (Id.) However, the terms of the loan as outlined in the Affordable

---

[3] At the hearing, Plaintiff's counsel provided the Court with a corrected version of Exhibit T. The corrected version of Exhibit T, paragraph 3.C, shows that Plaintiff would pay 2.00% interest for the first two years of the modified loan and lists the "number of monthly payments" for this 2.00% rate as "60." The original version is identical except that it lists the "number of monthly payments as "24." According to Plaintiff's counsel, the Exhibit T attached to the Complaint was a copy of the August 11, 2011, letter that CitiMortgage provided to the Minnesota Attorney General's Office.

Modification Agreement attached to the letter differed significantly from the terms in the online notice.  Although the initial monthly payment was $1,082.21, the interest rate on the loan was variable, increasing from 2.00% in the first two years of the loan to 6.75% by the seventh year of the loan.  (Id. at Affordable Modification Agreement ¶ 3.C.)   The principal balance of the modified loan was $61,673 greater than that contained in the online modification notice (Compl. ¶ 110), and the loan required a substantial balloon payment at the end of the term, whereas the monthly payments required by the online notice paid off the loan without any balloon payment.  (Agreement ¶ 3.C.)  In addition, the proposed agreement required Plaintiff to certify under oath that she lived in the property as her principal residence, something CitiMortgage knew was not the case.  (Id. ¶ 1.B.)  The agreement stated that, if any of Plaintiff's representations were not true and correct, "the Loan Documents will not be modified and this Agreement will terminate." (Id. ¶ 2.A.)  Plaintiff refused to sign the documents.  Throughout the fall of 2011, CitiMortgage continued to threaten foreclosure if Plaintiff did not accept the terms of the modified loan as presented in the August 11 letter.

Plaintiff brought this lawsuit contending that the modification details notice posted in her online account is legally enforceable.  She raises claims for breach of contract, promissory estoppel, equitable estoppel, unjust enrichment, part performance, fraud and misrepresentation, negligent misrepresentation, doctrine of apparent authority, declaratory relief, and breach of the implied covenant of good faith and fair dealing.  CitiMortgage now moves to dismiss Plaintiff's Complaint, arguing that she has failed to state any

claims on which relief can be granted.

## II.     DISCUSSION

### A.     Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiff draws from the facts pled.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550 U.S. at 556.

B.    **Breach of Contract**

At its heart, Plaintiff's Complaint contends that CitiMortgage breached the contract it made with her in May 2011 to provide her with a 480-month loan with a 2.00% interest rate. CitiMortgage denies that the online modification notice constitutes a contract, but CitiMortgage's arguments ignore the language it chose to communicate to Plaintiff: "Our records indicate that you have accepted our modification offer." (Compl. Ex. H.) Taking the facts in the light most favorable to Plaintiff, this language shows that CitiMortgage did intend its online modification notice to be an offer, and CitiMortgage believed that Plaintiff had accepted the offer.

Under Minnesota law, "[t]he formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." Commercial Assocs., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) (citing Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27 (Minn. 1983)). "[T]he test of contractual formation is an objective one, to be judged by the words and actions of the parties and not by their subjective mental intent." Hill v. Okay Constr. Co., 252 N.W.2d 107, 114 (Minn. 1977). "The agreement necessary to form a contract need not be express, but may be implied from circumstances that clearly and unequivocally indicate the intention of the parties to enter into a contact." Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp., 617 N.W.2d 67, 75 (Minn. 2000).

Plaintiff has pled that CitiMortgage made her a specific and definite offer, in the form of the online modification notice. This offer contained all the terms of her modified

loan, including principal balance, interest rate, and monthly payments. In addition, CitiMortgage itself referred to this notice as an "offer," bolstering the plausibility of Plaintiff's allegations. CitiMortgage also referenced Plaintiff's acceptance of the offer, and the online statement that Plaintiff would be required to forego any other refinancing options because she had accepted the offer supplies the requisite consideration. Because there is no dispute that the terms CitiMortgage presented to Plaintiff in August 2011 differed substantially from the terms in the online notice, Plaintiff has stated a claim for breach of contract.

CitiMortgage contends that Minnesota's credit statute of frauds, Minn. Stat. § 513.33, subd. 2, prohibits Plaintiff's breach of contract claim in this situation. That statute requires credit agreements to be set forth in writing signed by both the creditor and the debtor and must contain "the relevant terms and conditions." Minn. Stat. § 513.33, subd. 2. The online notice indisputably contained relevant terms and conditions for a modified loan. A reasonable jury could find that the appearance of the online notice on CitiMortgage's own website is sufficient to establish that CitiMortgage "signed" or otherwise adopted the offer. Finally, given CitiMortgage's own statements regarding Plaintiff's acceptance of the offer, it is a plausible inference that Plaintiff also adopted the terms of the offer. Thus, at this stage of the proceeding, the Statute of Frauds does not bar Plaintiff's claim.

**C.      Other Claims**

CitiMortgage contends that Plaintiff cannot claim both a breach of contract and

promissory estoppel, equitable estoppel, or part performance, because those claims only lie when there is no contract between the parties. See, e.g., Del Hayes & Sons, Inc. v. Mitchell, 230 N.W.2d 588, 593 (Minn. 1975) (holding that breach of contract claims and promissory estoppel claims are mutually exclusive). This argument is more appropriate for a later stage of this proceeding, if the evidence establishes that the online notice constituted a contract. It is, however, premature to dismiss the equitable claims before a final determination is made as to the existence of a valid contract.

With the exception of Plaintiff's claim for "doctrine of apparent authority' in Count Eight of the Complaint, the Court finds that Plaintiff's claims meet the 12(b)(6) plausibility standard. As to the claim for the doctrine of apparent authority, however, the Court in unaware of the existence of such a cause of action under Minnesota law. In one of the few cases discussing the doctrine as the basis for a cause of action, albeit in the specific context of a negligence lawsuit, the Minnesota Court of Appeals refused to recognize the cause of action. Kramer v. St. Cloud Hosp., No. A11-1187, 2012 WL 360415, * 13 (Minn. Ct. App. Feb. 6, 2012) (finding that Minnesota does not recognize an apparent-authority claim in the context of imposing vicarious liability on a hospital for the alleged negligence of non-employee physicians). Here, because no independent apparent authority cause of action appears to exist, Plaintiff's claim is dismissed. In any event, Plaintiff's allegations in support of that claim (Compl. ¶¶ 208-214), which allege vicarious liability and estoppel related to Defendant's representations would appear to be subsumed in Plaintiff's other claims.

With the exception of the apparent authority cause of action, Plaintiff has plausibly alleged the claims raised in her Complaint. CitiMortgage's Motion to Dismiss is therefore granted in part, as it relates to Plaintiff's apparent authority claim, and denied in part, as to all other claims.

### III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. CitiMortgage's Motion To Dismiss [Doc. No. 6] is **GRANTED in part** as to Plaintiff's apparent authority claim (Count Eight), and **DENIED in part** as to all other claims;

2. Count Eight of the Complaint is **DISMISSED WITH PREJUDICE**.

Dated: July 12, 2012                    s/Susan Richard Nelson
                                        SUSAN RICHARD NELSON
                                        United States District Judge